**AFFIRMED IN PART, REVERSED IN PART, RENDERED IN PART, AND REMANDED, and Opinion Filed January 6, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-18-00504-CV

**CARLETTA GUILLORY, SHARON REDD, AND ROBERT MAURICE CHARVOZ, JR., Appellants**
**V.**
**WILLIAM E. DIETRICH, Appellee**

**On Appeal from the County Court at Law No. 2**
**Kaufman County, Texas**
**Trial Court Cause No. 94304-CC2**

## OPINION

Before Justices Whitehill, Partida-Kipness, and Pedersen, III
Opinion by Justice Whitehill

Appellants and appellee sued each other on several claims regarding the late Dorothy Dietrich's property and estate. After a bench trial, the trial court ordered appellants to take nothing on their claims and awarded appellee William E. Dietrich actual damages, exemplary damages, attorney's fees, and declaratory relief on his counterclaims.

Appellants raise numerous issues. Our main holdings are that: (i) three of the five conversion actual damages awards are erroneous because there is no evidence that Dietrich demanded the property in question and no finding that appellants wrongfully acquired the property; (ii) the trial court erred by awarding Dietrich more unjust enrichment damages than he pled for; (iii) appellants have not shown that the trial court erred by making them jointly and severally liable

based on civil conspiracy; (iv) appellants' complaint that the trial court erroneously based its exemplary damages awards on an unpled gross negligence theory fails because the exemplary damages are not predicated on a gross negligence finding; and (v) the attorney's fees award is erroneous because Dietrich did not segregate his fees between recoverable fees and unrecoverable fees.

Accordingly we reverse the judgment for actual damages and render judgment in a lower amount, reverse the attorney's fee award and the judgment interest award, affirm the rest of the judgment, and remand for further proceedings.

## I. BACKGROUND

### A. Facts

We draw these facts from the trial evidence and uncontradicted factual statements in the parties' briefs. *See* TEX. R. APP. P. 38.1(g).

The central figure in this dispute is Dorothy Dietrich (Dottie), who died in 2015. Appellant Carletta Guillory is Dottie's estate's executor.

When Dottie died, she was married to appellee William E. Dietrich. When she married Dietrich in 1980, Dottie had four children from prior relationships: appellants Sharon Redd and Robert Charvoz, a son named James who predeceased Dottie, and a daughter named Mary Brooks who is not involved in this case. Dietrich has no children.

Dottie had a stroke in 2008. There was evidence that the stroke left her partially disabled physically but still competent to manage her own affairs.

The parties' disputes focus on events after Dottie's stroke and after her death. Appellants pled that (i) after Dottie's stroke Dietrich improperly took assets belonging to her and (ii) after she died Dietrich improperly withheld Dottie's personal property from her estate.

–2–

Dietrich pled that after Dottie died appellants worked together to convert property belonging to him. He also pled that Dottie's estate should reimburse him for about $24,000 in federal income taxes he paid on Dottie's behalf.

## B. Procedural History

Guillory sued Dietrich for breaching his fiduciary duty to Dottie. Redd and Charvoz later joined the suit as additional plaintiffs.

Appellants' live pleading at trial was their fourth amended petition. That pleading repeated the fiduciary breach claim from the original petition. It also asserted several other claims against Dietrich, including claims for:

- a declaratory judgment (i) that Dietrich attempted to circumvent contractual wills he and Dottie executed and (ii) determining which property is separate property and which property is community property;

- wrongful interference with Dottie's beneficiaries' rights;

- an accounting and turnover order regarding Dottie's jewelry and other personal property;

- a constructive trust over money Dietrich improperly took from Dottie; and

- attorney's fees and exemplary damages.

Dietrich counterclaimed against appellants. His live counterclaim alleged that appellants converted various funds and real property properly belonging to him. He also alleged unjust enrichment, fraud on the community, and conspiracy. Finally, he also sought several declaratory judgments and attorney's fees.

The case was tried to the bench.

The trial judge eventually signed a final judgment in Dietrich's favor on both appellants' claims and his counterclaims. He also signed findings of fact and conclusions of law.

Appellants filed (i) a new trial motion, (ii) a separate motion to modify, correct, or reform the judgment, and (iii) a request for additional or amended findings and conclusions. Dietrich's response agreed that the judgment should be modified in certain limited respects.

The trial judge then signed a modified final judgment in Dietrich's favor. He also signed a new set of findings of fact and conclusions of law. The new findings and conclusions did not vacate or otherwise reference the previous findings and conclusions. Comparison reveals that the new findings and conclusions repeated verbatim most of the original findings and conclusions, modified a few of the previous findings and conclusions, and added some new findings. Thus, this opinion refers only to the new findings and conclusions.

The modified final judgment made appellants jointly and severally liable to Dietrich for (i) five actual damages categories totaling about $75,000, (ii) past attorney's fees of $200,000, and (iii) conditional appellate attorney's fees of up to $15,000. It also awarded Dietrich exemplary damages totaling $16,666.68 against Guillory and $16,666.66 against each of Redd and Charvoz. The modified final judgment also contained several declaratory judgments not at issue on appeal.

Appellants filed another new trial motion, which was overruled by operation of law. They then timely appealed.

## II. ISSUES PRESENTED

Appellants present six issues, which we summarize as follows:

1.    The trial court erred by making appellants jointly and severally liable for Dietrich's actual damages.

2.    The five actual damages awards are not supported by the pleadings, the findings, or legally sufficient evidence.

3.    The exemplary damages awards are not supported by proper fact findings or legally sufficient evidence. Also, a fact finding of gross negligence is not supported by pleadings.

4.    The attorney's fee awards are duplicative. Also, Dietrich did not segregate his fees, and the fact findings invoke a fee shifting statute that is not supported by pleadings, evidence, or findings.

5. The trial court erred to the extent it overruled appellants' Rule 307 exceptions to the original and modified final judgments.[1]

6. The trial court erred by adopting verbatim Dietrich's proposed findings of fact and conclusions of law.

### III. ANALYSIS

We first address a threshold matter that appellants raise before they argue the issues summarized above. Then we address appellants' issues.

### A. Should we disregard the trial court's "evidentiary" fact findings as inappropriate and immaterial?

Yes, because the vast majority of the fact findings concern evidentiary details and unduly complicate appellants' task and our ability to resolve this case. But these matters alone do not in this case warrant reversal.

Appellants argue that we should disregard most of the trial court's fact findings because they are inappropriate or immaterial. They contend that fact findings should address only matters forming the basis for the judgment, just as jury charges should submit only fact questions necessary to form the basis for the judgment. Here, the trial judge made 206 findings of fact, plus roughly nine pages of conclusions of law that include numbered and unnumbered paragraphs, citations to cases and statutes, and statements that appear to be additional fact findings.

Dietrich does not respond to appellants' complaint except to call it "unmeritorious."

We agree with appellants.

The purpose of requesting findings of fact and conclusions of law is to narrow the judgment's bases and thereby reduce the number of contentions the appellant must make on appeal. *Rossmann v. Bishop Colo. Retail Plaza, L.P.*, 455 S.W.3d 797, 808 (Tex. App.—Dallas 2015, pet. denied). With this in mind, we agree with our sister courts that "a trial court should not make

---

[1] Appellants do not argue issue 5 separately from their first four issues. It appears to be a reference to one of appellants' error-preservation devices. We do not discuss issue 5 in this opinion as a distinct issue.

findings on every disputed fact, but only those having some legal significance to an ultimate issue in the case." *Watts v. Lawson*, No. 07-03-0485-CV, 2005 WL 1241122, at \*3 (Tex. App.—Amarillo May 25, 2005, no pet.) (mem. op.); *accord Stuckey Diamonds, Inc. v. Harris Cty. Appraisal Dist.*, 93 S.W.3d 212, 213 (Tex. App.—Houston [14th Dist.] 2002, no pet.). Indeed, the problem of excessive fact findings that make judgments unnecessarily difficult for litigants to appeal and appellate courts to review has gotten some attention, if not resolution. *See* Minutes of Oct. 20, 2006 Supreme Court Advisory Committee meeting at 14877–14918 (available at https://digitalcollections.stcl.edu/digital/collection/p16035coll3/id/321/rec/291).

Many fact findings in this case have no obvious relevance to any ultimate issue, such as finding 30 ("[Dietrich] was employed by Procter & Gamble for over 40 years."). These additional findings concern evidentiary matters instead of controlling issues. As such they are unnecessary. *See, e.g.*, *Knight Renovations, LLC v. Thomas*, 525 S.W.3d 446, 453–54 (Tex. App.—Tyler 2017, no pet.). We disregard such findings in this opinion.

Moreover, the unnecessary findings made our task in resolving this appeal, and presumably appellants' task in briefing it, more difficult. A trial court should make findings as to only disputed facts significant to the case's ultimate issues. Findings that a jury would be asked to make in a case may be an appropriate guide. Although we impose no consequences for the excessive findings in this case, excessive findings that obscure rather than clarify the judgment's basis may lead to consequences such as remand for proper findings or sanctions.

**B.     Issue Two:  Do the actual damages awards reflect reversible error?**

Yes, three of the five conversion awards are erroneous because as to them there is no evidence concerning the "demand" element on which the trial court based its judgment nor any finding that would excuse the demand element. And the unjust enrichment awards must be

reversed to the extent they exceed $24,280 because that is the amount Dietrich pled for regarding unjust enrichment damages.

### 1. What are the actual damages awards for?

We first explain the judgment and the findings to give context for our analysis.

In summary, the trial court found that appellants (i) converted items worth $75,169.98 and (ii) were unjustly enriched in the amount of $75,129.98. Those amounts represent compensation for the same injuries, except for $40 that were awarded for conversion but not for unjust enrichment. Importantly, the fact findings explaining the damages awards are different from the judgment's recitations.

The modified final judgment awards Dietrich the following actual damages:

- "**$17,120.98** for the conversion of the USAA Subscriber Savings Account."

- "**$7,300.00** for the conversion and unjust enrichment of the claim for missing jewelry proceeds from USAA."

- "**$26,429.00** for the conversion and unjust enrichment of the reimbursement proceeds from Genworth long-term care."

- "**$40.00** for the late fee charge incurred by [Dietrich] for property taxes."

- "**$24,280.00** for one-half (1/2) of the federal income taxes owed by the Decedent's Estate."

However, we cannot consider findings of fact recited in a judgment where there are express fact findings in the record. TEX. R. CIV. P. 299a. Rather, the trial court's separate fact findings and legal conclusions supply the controlling findings and legal theories supporting the actual damages awards. *Id*. Although some findings appear under the "conclusions of law" heading, we still treat them as fact findings. *See Ray v. Farmers' State Bank of Hart*, 576 S.W.2d 607, 608 n.1 (Tex. 1979).

As to conversion, the findings and conclusions are not entirely consistent. In conclusion of law 5, the trial court says that appellants converted the first three sums awarded—$17,120.98

in insurance savings account funds, $7,300 in jewelry insurance proceeds, and $26,429 in long-term care reimbursement proceeds. But in conclusion of law 9, the trial court says that appellants converted all five sums awarded in the judgment for a total of $75,169.98. We conclude that the best way to harmonize the two is to give full effect to conclusion of law 9, even though that makes some of the material in conclusion of law 5 redundant, because limiting our reading to conclusion of law 5 would ignore two clear, express findings in conclusion 9. *See Loaiza v. Loaiza*, 130 S.W.3d 894, 904 (Tex. App.—Fort Worth 2004, no pet.) ("Texas law requires that an effort be made to reconcile conflicts in findings of fact.").

Thus, we conclude that the trial court found that all actual damages awarded in the judgment were conversion damages. *See* TEX. R. CIV. P. 299a (findings made in a separate document control over findings improperly recited in a judgment).

As to unjust enrichment, conclusion of law 6 recites that four of the five actual damages amounts were also awarded for unjust enrichment—all except the $40 late fee charge. This conflicts with, and controls over, the judgment's recitals that only two amounts ($7,300 and $26,429) were awarded for unjust enrichment. *See id*.

Thus, the trial court found that appellants (i) converted $75,169.98 belonging to Dietrich, and (ii) were also unjustly enriched by $75,129.98, representing essentially the same funds:

| Awards | Bases |
|---|---|
| $17,120.98 for USAA savings account | Conversion and unjust enrichment |
| $7,300 for jewelry insurance proceeds | Conversion and unjust enrichment |
| $26,429 for long-term care insurance payments | Conversion and unjust enrichment |
| $40 for property tax late fee | Conversion |
| $24,280 in federal income taxes | Conversion and unjust enrichment |

**2.    Are the conversion awards erroneous because the trial court did not find that Dietrich made demand for the converted property?**

No.  Read as a whole, the findings and conclusions reflect that the trial court found that Dietrich demanded return of each allegedly converted item.

Appellants argue that the trial court should have awarded Dietrich nothing on his conversion claims because the trial court made no findings that Dietrich demanded the property's return—despite reciting in conclusion of law 5 that demand is an essential element of conversion. We disagree with this premise because the findings and conclusions as a whole show that the trial court found the essential demand element.

"To establish conversion of personal property, a plaintiff must prove (1) the plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) the defendant, unlawfully and without authorization, assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with, the plaintiff's rights; (3) the plaintiff made a demand for the property; and (4) the defendant refused to return the property." *Wise v. SR Dallas, LLC*, 436 S.W.3d 402, 412 (Tex. App.—Dallas 2014, no pet.).

However, demand and refusal are required only if the defendant acquired possession of the property lawfully and without fault. *See Letot v. United Servs. Auto. Ass'n*, No. 05-14-01394-CV, 2017 WL 1536501, at *6 n.8 (Tex. App.—Dallas Apr. 27, 2017, pet. denied) (mem. op.) ("Ordinarily, a demand and refusal are required to establish a conversion when a person initially acquired possession lawfully and without fault."); *French v. Moore*, 169 S.W.3d 1, 13 (Tex. App.—Houston [1st Dist.] 2004, no pet.) ("A plaintiff is required to demand return of the property if the defendant legally obtained possession.").

Conversely, no demand is required if the defendant initially acquired possession unlawfully or wrongfully.  *Carpenter v. Carpenter*, No. 02-11-00266-CV, 2012 WL 2579498, at *2 (Tex.

App.—Fort Worth July 5, 2012, pet. denied) (mem. op.); *McVea v. Verkins*, 587 S.W.2d 526, 531 (Tex. App.—Corpus Christi 1979, no writ).

Here, conclusion of law 5 defines conversion and tracks the four elements listed in *Wise*. Then, conclusion of law 9 says, "Plaintiffs converted [each of the five actual damages components]." Thus, by stating that conversion consists of four specific elements and then finding that appellants converted specific funds, the trial court found that all four elements—including demand—were satisfied as to each appellant.[2] *See Brown v. Frontier Theatres, Inc.*, 369 S.W.2d 299, 301 (Tex. 1963) ("The findings of fact and the conclusions of law will be construed together; and if the findings of fact are susceptible of different constructions, they will be construed, if possible, to be in harmony with the judgment and to support it.").

### 3. Are the conversion awards erroneous because there was legally insufficient evidence that Dietrich demanded the property's return?

Yes, in part. There is no evidence of demand as to any of the five items. However, the trial court found that two converted items were obtained wrongfully, which suffices as a substitute for demand. We therefore uphold the awards of those two items on a conversion theory.

Appellants argue that there is no evidence that Dietrich ever demanded that appellants return any property to him.[3]

Dietrich responds that (i) he adequately proved demand and alternatively (ii) demand and refusal to return the property weren't required in this case.

We review a trial court's fact findings under the same legal sufficiency standards that apply to jury verdicts. *Catalina v. Blasdell*, 881 S.W.2d 295, 297 (Tex. 1994). When an appellant attacks the legal sufficiency of the evidence to support an adverse finding on an issue on which it did not

---

[2] Because the trial court found all elements of conversion, including demand, this case does not present an omitted element situation calling for application of Rule 299. *See* TEX. R. CIV. P. 299 ("Omitted Findings").

[3] Appellants construe the findings to mean that the trial court awarded only the first three actual damages categories for conversion, not recognizing that conclusion of law 9 includes conversion findings for all five categories. But they argue broadly that there was no evidence of demand for any property, so we will take their argument to address all five categories.

have the burden of proof, it must show that no evidence supports the finding. *Kelley & Witherspoon, LLP v. Hooper*, 401 S.W.3d 841, 847 (Tex. App.—Dallas 2013, no pet.). When evidence is so weak that it does no more than create a surmise or suspicion of the matter to be proved, the evidence is no more than a scintilla and, in legal effect, is no evidence. *Id*. The evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the finding under review. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005) (review of jury verdicts). In conducting our review, we view the evidence in the light most favorable to the finding and indulge every reasonable inference that would support it. *Id*. at 822. We must credit evidence favorable to the finding if a reasonable person could, and we must disregard contrary evidence unless a reasonable person could not. *Id*. at 827.

We find no record evidence that Dietrich demanded the return of any of the five items related to the actual damages. Dietrich suggests that he "dispute[d]" appellants' control over the property in his filings in this case. But, assuming without deciding that court filings can suffice to show a demand for conversion purposes, those filings were not admitted into evidence here. Thus, they are not evidence. *See Swarovski v. Enger*, No. 05-17-00398-CV, 2018 WL 1357483, at *2 n.2 (Tex. App.—Dallas Mar. 16, 2018, no pet.) (mem. op.) ("Pleadings are not evidence unless offered by a party and admitted as evidence by the trial court."). Dietrich offers no other references to evidence that might show demand.

Because there is legally insufficient evidence that Dietrich demanded the return of any disputed property, the actual damages awards for conversion cannot be sustained based on the trial court's demand findings.

But Dietrich argues that demand is not required "if other evidence establishes an action of conversion or if the demand would have been futile." He cites several cases in support, the most relevant of which are *Presley v. Cooper*, 284 S.W.2d 138 (Tex. 1955), and *Letot v. United Services*

*Automobile Ass'n*, No. 05-14-01394-CV, 2017 WL 1536501 (Tex. App.—Dallas Apr. 27, 2017, pet. denied) (mem. op.). In *Letot*, we cited *Presley* for the premise that "[t]he demand and refusal elements are not . . . required if other evidence establishes an act of conversion." 2017 WL 1536501, at *6. But, as stated in part III(B)(2) above, ordinarily, a demand and refusal are required to establish conversion if a person initially acquired lawful possession without fault. *Id*. at *6 n.8; *see also French*, 169 S.W.3d at 13. Conversely, demand and refusal are not required if the defendant wrongfully acquired possession. *Carpenter*, 2012 WL 2579498, at *2; *McVea*, 587 S.W.2d at 531.

Here, the trial court found that appellants wrongfully acquired some of the allegedly converted items:

> 122.  Guillory, Redd and Charvoz wrongfully took possession of the proceeds for the jewelry in the amount of $7,300.00 and the subscriber savings account in the amount of $17,120.98.

Thus, it was unnecessary for Dietrich to prove or obtain findings of demand as to those two items, and the awards of those related conversion damages are not erroneous.[4]

However, there are no similar findings for the other three items that the trial court found appellants converted. One is a $40 property tax late fee that the trial court awarded only on a conversion theory, so the judgment must be reversed as to that amount. *See Wells Fargo Bank Nw., N.A. v. RPK Capital XVI, L.L.C.*, 360 S.W.3d 691, 706 n.5 (Tex. App.—Dallas 2012, no pet.) ("[W]hen the trial court's judgment rests upon the specific grounds set out in the findings of fact and conclusions of law, we are not permitted to assume omitted findings or conclusions necessary to any other grounds for the judgment."). But the trial court awarded the other two amounts ($26,429 and $24,280) for both conversion and unjust enrichment, so those two awards will stand

---

[4] Although the trial court's legal conclusions did not mention the rule that demand and refusal are unnecessary if a conversion defendant acted wrongfully in acquiring the property, erroneous legal conclusions do not require reversal if the court's judgment is proper on the findings. *See Thornton v. Dobbs*, 355 S.W.3d 312, 316 (Tex. App.—Dallas 2011, no pet.).

unless it was also error to award those amounts as unjust enrichment damages. We turn now to that question.

### 4. Are the unjust enrichment awards exceeding $24,280 erroneous for lack of pleadings to support them?

Yes, because Dietrich pled for only $24,280 in unjust enrichment damages. Thus, the $26,429 long-term care insurance payments are not recoverable under unjust enrichment.

Appellants argue that Dietrich's live pleading sought only $24,280 as unjust enrichment damages, so the judgment on that theory cannot exceed that amount. They preserved this argument by asserting it in their two requests for additional or amended findings of fact and their second new trial motion. *See* TEX. R. APP. P. 33.1(a).

Dietrich responds that his live counterclaim sought all the damages that the trial court awarded except the $40 late fee.

"[A] judgment must be supported by the pleadings and, if not so supported, it is erroneous. . . . Thus, a party may not be granted relief in the absence of pleadings to support that relief." *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex. 1983) (citations omitted); *see also* TEX. R. CIV. P. 301 ("The judgment of the court shall conform to the pleadings, the nature of the case proved and the verdict, if any, and shall be so framed as to give the party all the relief to which he may be entitled either in law or equity.").

Accordingly, "[a] judgment for money damages in excess of the amount pleaded cannot be supported," and such a judgment must be reformed. *Socony-Vacuum Oil Co., Inc. v. Aderhold*, 240 S.W.2d 751, 756 (Tex. 1951); *see also Picon Transp., Inc. v. Pomerantz*, 814 S.W.2d 489, 491 (Tex. App.—Dallas 1991, writ denied) ("A trial court cannot render judgment for an amount in excess of what the plaintiff requested in his last pleading.").

Our decision in *Thate v. Texas & Pacific Railway Co.* is instructive. 595 S.W.2d 591 (Tex. App.—Dallas 1980, writ dism'd). In that case, Thate sought to recover several damages

categories, and he pled specifically for $121,000 in future medical expenses. The jury, however, awarded him more than that amount. The railroad won a take-nothing judgment n.o.v., but we reversed and rendered judgment on the verdict, modified to reduce the future medical expenses award to $121,000. *Id.* at 601–02. Thus, the fact that Thate also sought other categories of damages did not allow him to recover more future medical expense damages than he pled for. *See id.*; *see also J. Weingarten, Inc. v. Higginbotham*, 523 S.W.2d 450, 453 (Tex. App.—Beaumont 1975, writ ref'd n.r.e.) (plaintiff could not recover past medical expenses exceeding the $500 amount pled).

Here, Dietrich specifically pled that appellants had been unjustly enriched in the amount of "approximately $24,280.00," representing Dottie's share of federal income taxes that Dietrich paid. Although he pled for other damages as well, he did not plead unjust enrichment as a basis for recovering them. We conclude that the trial court erred by awarding Dietrich more than $24,280 as unjust enrichment damages. *See Port Terminal R.R. Ass'n v. Inge*, 524 S.W.2d 801, 804 (Tex. App.—Houston [14th Dist.] 1975, no writ) (plaintiff who pled for "the approximate sum" of $15,000 in medical expenses could not recover the full $17,500 found by the jury).

### 5.      Conclusion

We sustain appellants' second issue in part. The trial court erred by awarding Dietrich actual damages of $26,429 for long-term care insurance payments and $40 for a property tax late fee. Appellants have not shown that the trial court erred by awarding Dietrich conversion damages of $17,120.98 for the USAA savings account and $7,300 for jewelry insurance proceeds. Nor have they shown that the trial court erred by awarding Dietrich $24,280 in unjust enrichment actual damages.

**C.     Issue One:  Did the trial court err by making appellants jointly and severally liable for Dietrich's tort actual damages?**

No, because the trial court's findings that all three appellants committed civil conspiracy support imposing joint and several liability on them.

Appellants argue that the trial court erred by making them jointly and severally liable for Dietrich's tort actual damages.  They argue that this was erroneous for three reasons:

i.     the court didn't find any appellant more than 50% responsible per § 33.013(b)(1);

ii.    the court didn't find, and there was no evidence, that appellants acted with specific intent to harm others and in concert to violate the penal statutes listed in § 33.013(b)(2); and

iii.   Chapter 33 supersedes the common law that civil conspiracy will support joint and several liability.

But Dietrich doesn't argue that § 33.013(b) supports the trial court's joint and several liability rulings.  Rather, he argues that, Chapter 33 notwithstanding, defendants are jointly and severally liable whenever (i) their torts cause an indivisible injury or (ii) they engage in a civil conspiracy.  He further argues that both conditions are satisfied here.[5]

We proceed to the civil conspiracy findings because they are dispositive.  Appellants argue that Chapter 33 supersedes common law joint and several liability doctrines such as civil conspiracy.  They rely on a recent law review article for support.  *See* Lyndon Bittle, *Conspiracy: Has Joint and Several Liability Been Supplanted by Proportionate Responsibility?*, 69 BAYLOR L. REV. 378 (2017).

However, we recently confronted and rejected that argument.  In *LandAmerica Commonwealth Title Co. v. Wido*, LandAmerica was found to have committed civil conspiracy, and the trial court imposed joint and several liability on it and a co-defendant.  No. 05-14-00036-

---

[5] Dietrich also makes a failure to preserve error argument.  Given our disposition on the merits, we assume without deciding that appellants preserved error.

CV, 2015 WL 6545685, at \*3 (Tex. App.—Dallas Oct. 29, 2015, no pet.) (mem. op.). On appeal, LandAmerica argued that the joint and several liability judgment was erroneous because there were no findings satisfying § 33.013(b)(1) or (2). *Id*. at \*10. We rejected the argument, concluding that the civil conspiracy findings supported imposing joint and several liability. *Id*. at \*11. Thus, *LandAmerica* holds that civil conspiracy remains a valid basis for joint and several liability even when Chapter 33's joint and several liability conditions are not satisfied.

Our *LandAmerica* holding is supported by the Texas Supreme Court's recent holding that civil conspiracy is only a means of imposing vicarious liability, not an independent tort. *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019). Vicarious liability is a common law doctrine that makes a party liable for another person's fault based solely on the relationship between the vicariously liable party and the culpable person. *See Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 130 (Tex. 2018).

Chapter 33 does not address vicarious liability situations. *See* CIV. PRAC. & REM. CODE §§ 33.001–.017; *see also* Bittle, *supra*, at 396 ("It is generally accepted that claims [for] purely vicarious liability . . . are not subject to the statute [Chapter 33]."); Carl David Adams, *The "Tort" of Civil Conspiracy in Texas*, 54 BAYLOR L. REV. 305, 315 (2002) ("No portion of Chapter 33 speaks to or purports to modify any of the previously established common law rules of vicarious liability."). As the Eastland Court of Appeals recently held, "joint and several liability attaches to a civil conspiracy finding and is not affected by the proportionate responsibility statutes." *Stephens v. Three Finger Black Shale P'ship*, 580 S.W.3d 687, 719 (Tex. App.—Eastland 2019, pet. filed). Consistent with our *LandAmerica* holding, we agree.

In sum, appellants' first issue depends on the premise that Chapter 33 superseded the rule that civil conspiracy findings result in joint and several liability. Because we reject that premise, we overrule appellants' first issue.

**D.      Issue Three:  Do the exemplary damages awards reflect reversible error?**

No.  Appellants raise several arguments attacking the trial court's awards of exemplary damages to Dietrich.

**1.      The Exemplary Damages Awards and Supporting Findings**

The final judgment assesses two distinct but identical exemplary damages awards against each appellant:

> IT IS FURTHER ORDERED that Defendant recover from the Plaintiffs/Counter Defendants exemplary damages for acting with malice, individually and in conspiracy, to intentionally cause substantial harm to Defendant as follows:
>
> > from Carletta Guillory, individually, the sum of **$8,333.34**.
> >
> > from Sharon Redd, individually, the sum of **$8,333.33**, and
> >
> > from Robert Maurice Charvoz, Jr., individually, the sum of **$8,333.33**.
>
> IT IS FURTHER ORDERED that Defendant recover from the Plaintiffs/Counter Defendants exemplary damages for acting individually and in conspiracy to intentionally cause financial and emotional harm Defendant as follows:
>
> > from Carletta Guillory, individually, the sum of **$8,333.34**.
> >
> > from Sharon Redd, individually, the sum of **$8,333.33**, and
> >
> > from Robert Maurice Charvoz, Jr., individually, the sum of  **$8,333.33**.

Fact findings 151–152 and 158–159 support these awards:

151.    There is clear and convincing evidence that the harm to [Dietrich] resulted from malice and/or gross negligence attributable to Plaintiffs.

152.    Plaintiffs specifically intended to cause substantial harm to [Dietrich].

. . . .

158.    Considering the nature of the wrong, the character of the conduct involved, the degree of culpability of the wrongdoers, the situation and sensibilities of the parties concerned, and the extent to which such conduct offends a public sense of justice and propriety, the Court finds that exemplary damages should be awarded for acting with malice, individually and in conspiracy, to cause substantial harm to [Dietrich] as follows:

from Carletta Guillory, individually, the sum of **$8,333.34**,
from Sharon Redd, individually, the sum of **$8,333.33**, and

from Robert Maurice Charvoz, Jr., individually, the sum of **$8,333.33**.

159. Considering the nature of the wrong, the character of the conduct involved, the degree of culpability of the wrongdoers, the situation and sensibilities of the parties concerned, and the extent to which such conduct offends a public sense of justice and propriety, the Court finds that exemplary damages should be awarded for acting individually and in conspiracy to intentionally cause financial and emotional harm [to] [Dietrich] as follows:

   from Carletta Guillory, individually, the sum of **$8,333.34**,
   from Sharon Redd, individually, the sum of **$8,333.33**, and
   from Robert Maurice Charvoz, Jr., individually, the sum of **$8,333.33**.

Finally, the trial court also explained the exemplary damages awards' bases in an unnumbered paragraph under conclusion of law 10:

10. **[Dietrich] is entitled to exemplary damages for Plaintiffs['] actions**

. . . .

   Because of the willful, intentional and malicious acts of each Plaintiff in converting funds, freezing [Dietrich]'s assets, misleading the Court about the facts in order to obtain a temporary restraining order, suing [Dietrich] over joint accounts he was entitled to and over his own funds held in joint accounts, [Dietrich] should be awarded exemplary damages against Plaintiffs.

**2.     Appellants' Arguments**

To begin, appellants assert, "[N]o legally sufficient evidence supports double mulcting of the appellants, who believe in good faith they have valid claims for breach by Dietrich of his 2007 contractual will and fiduciary power of attorney obligations." This sentence is supported by some record references and one case citation, but there is no additional argument or explanation. To the extent appellants intend this assertion to stand as an independent argument, we reject it as inadequately briefed. *See* TEX. R. APP. P. 38.1(i); *see also Bolling v. Farmers Branch Indep. Sch. Dist.*, 315 S.W.3d 893, 895–96 (Tex. App.—Dallas 2010, no pet.).

Next, appellants assert that "Dietrich also lacks evidence and ***timely***, separately filed findings of fact to support the specific amounts [of exemplary damages] duplicatively imposed" against appellants. (Emphasis in original.) This assertion suggests two distinct arguments: (i) the

–18–

awards are excessive under the evidence and (ii) there are no findings to support the awards because the trial court signed the findings after the deadline ran. But appellants don't brief an excessiveness challenge, so we reject that argument to the extent appellants intend to make it. *See* TEX. R. APP. P. 38.1(i). And appellants' untimeliness argument is incorrect under this Court's precedents. *See In re E.A.C.*, 162 S.W.3d 438, 443 (Tex. App.—Dallas 2005, no pet.) ("When a trial court files belated findings, the only issue that arises is whether the appellant was harmed, not whether the trial court had jurisdiction to make the findings."); *Morrison v. Morrison*, 713 S.W.2d 377, 380–81 (Tex. App.—Dallas 1986, writ dism'd). Even assuming the trial judge signed the findings and conclusions late, appellants have not shown harm from the delay. Accordingly, we reject appellants' late findings argument.

Appellants' fourth argument is that we must reverse the exemplary damages awards if we reverse all the actual damages awards. *See* CIV. PRAC. & REM. CODE § 41.004 ("[E]xemplary damages may be awarded only if damages other than nominal damages are awarded."). Because we are affirming some of the actual damages awarded in this case, appellants' fourth argument fails.

Appellants' fifth and sixth arguments are that the exemplary damages awards must be reversed because "Dietrich failed to prove and obtain an unambiguous finding of 'fraud' or 'malicious conduct'—his only ***pleaded*** theories for recovering exemplary damages—by clear and convincing evidence." (Emphasis in original; record reference omitted.) Their fifth argument again signals an evidentiary sufficiency challenge—"Dietrich failed to prove . . . 'fraud' or 'malicious conduct'"—but they don't support it with argument. To the extent appellants intend to challenge the evidence supporting the exemplary damages predicates, we reject that challenge for inadequate briefing. *See* TEX. R. APP. P. 38.1(i)

Appellants' sixth argument focuses on finding 151, in which the trial court found, "There is clear and convincing evidence that the harm to [Dietrich] resulted from malice *and/or gross negligence* attributable to Plaintiffs." (Emphasis added.) Appellants argue, correctly, that Dietrich did not plead gross negligence but rather pled for exemplary damages only for the alleged "fraud committed by and malicious conduct of the Executor and Plaintiffs." Appellants preserved this argument in the trial court by raising the pleading defect in their new trial motions and motion to modify, correct, or reform the judgment. *See* TEX. R. APP. P. 33.1(a). On appeal, they argue that (i) the exemplary damages awards can't properly be based on gross negligence because that theory wasn't pled, (ii) the exemplary damages awards are or may be based in whole or in part on the gross negligence finding, so (iii) the awards must be reversed under cases such as *Crown Life Insurance Co. v. Casteel*, 22 S.W.3d 378 (Tex. 2000) and *In re Marriage of C.A.S. & D.P.S.*, 405 S.W.3d 373 (Tex. App.—Dallas 2013, no pet.) (applying *Casteel* to bench trials).

Dietrich responds that the gross negligence finding is gratuitous and immaterial because findings 158 and 159[6] predicate the first three exemplary damages awards on "acting with malice, individually and in conspiracy, to cause substantial harm to [Dietrich]" and the other three awards on "acting individually and in conspiracy to intentionally cause financial and emotional harm [to] [Dietrich]."

We agree with Dietrich that the exemplary damages awards are not based on gross negligence. Findings 158 and 159 predicate the awards specifically on appellants' malicious and intentional conduct. Those findings don't mention gross negligence, which is a less culpable mental state than either malice (i.e., a specific intent to cause substantial injury or harm to the claimant, CIV. PRAC. & REM. CODE § 41.001(7)) or intent to harm. *See* CIV. PRAC. & REM. CODE § 41.001(11)(B) (gross negligence requires only conscious indifference); *see also Luna v. N. Star*

---

[6] Dietrich actually cites the findings in the judgment, but the separate findings of fact are controlling.

–20–

*Dodge Sales, Inc.*, 667 S.W.2d 115, 118 (Tex. 1984) (gross negligence is the "lowest mental state" when compared with knowing, willful, and intentional).  Thus, we conclude that the trial court's ambiguous gross negligence finding is not a basis of the exemplary damages awards.[7]  Accordingly, appellants' argument that the exemplary damages awards should be reversed because Dietrich didn't plead gross negligence fails.

Finally, footnote 24 in appellants' brief contains several other assertions that may or may not be intended as separate arguments challenging the exemplary damages awards.  To the extent they are intended to be separate arguments, we reject them as inadequately briefed. *See* Tex. R. App. P. 38.1(i)

We overrule appellants' third issue.[8]

**E.      Issue Four:  Do the attorney's fees awards reflect reversible error?**

Under issue four, appellants argue that the trial court reversibly erred in two respects: (i) it awarded the same attorney's fees to Dietrich twice and (ii) it awarded Dietrich all of his fees even though he didn't segregate recoverable fees from unrecoverable fees.  We agree with the second premise and thus need not address the first.

**1.      What did the trial court award for attorney's fees and why?**

Appellants contend, and Dietrich agrees, that the judgment seems to award Dietrich the same attorney's fees twice.  Specifically, on page two, the judgment awards Dietrich his actual damages and then awards him attorney's fees of $200,000 through judgment and up to $15,000 in conditional appellate fees.  On pages three and four, the judgment awards Dietrich exemplary damages and then awards him the same attorney's fees again, in identical language.

---

[7] We also note that using "and/or" in a fact finding is undesirable because it forces the reader to guess at the court's meaning and thus defeats the purpose of findings.  *See Rossmann*, 455 S.W.3d at 808 (purpose of requesting findings is to narrow the bases of the judgment and reduce the number of contentions an appellant must make).

[8] This opinion should not be construed as holding that exemplary damages are available based solely on "malicious conduct."  *See, e.g.*, *Safeshred, Inc. v. Martinez*, 365 S.W.3d 655, 659 (Tex. 2012) (exemplary damages not available for contract breach claims).

The findings and conclusions supply the legal bases for the fees. Findings 196 and 197 recite that Dietrich is entitled to recover his attorney's fees under the Declaratory Judgments Act and under the Estates Code.[9]  *See* CIV. PRAC. & REM. CODE § 37.009; TEX. EST. CODE § 352.052(b).  Conclusion of law 8 repeats that Dietrich is entitled to attorney's fees under the Declaratory Judgments Act, and it further says that Dietrich is entitled to recover all of his fees "because the issues were so intertwined that they cannot be separated."

### 2. The Law Governing Segregation of Attorney's Fees

A litigant cannot recover his attorney's fees unless a statute or contract authorizes it. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006).  Thus, when a claimant prevails on some claims for which fees are recoverable and some claims for which they aren't, the claimant generally must segregate his fees between the two kinds of claims. *Id.* at 311.

*Chapa* explains and refines the segregation rule and its exception as follows:

> [I]f any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees. Intertwined facts do not make tort [i.e., unrecoverable] fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated.

*Id.* at 313–14.  Said another way, if a party is entitled to recover his fees incurred in litigating certain claims, he can recover all those fees even if those legal services also happened to address other claims for which fees aren't recoverable.  But he can't recover fees for legal services rendered solely to litigate claims for which fees aren't recoverable, and if there are such fees he must segregate them out in the evidence.

---

[9] Appellants assert that Dietrich didn't plead a right to recover fees under Estates Code § 352.052(b), but they don't explain how they preserved this error.  In any event, our resolution of this issue makes consideration of this point unnecessary.

If a claimant fails to segregate his fees when the law requires it, the evidence of his unsegregated fee amount is "some evidence of what the segregated amount should be." *Id*. at 314 (footnote omitted). Thus, an improper failure to segregate results in remand, not rendition. *Id*.

### 3. Did appellants preserve their failure to segregate argument?

Yes, they preserved error by pointing out the problem before the judgment was signed.

In finding 204, the trial court found that "[b]ecause [appellants] did not object, they waived any complaint that [Dietrich's] attorney's fees were not segregated." Under conclusion of law 8, the trial court stated, "Since [appellants] did not object to [Dietrich's attorney Donna] Yarborough's testimony regarding attorney's fees as not being segregated, therefore they waived any objection."

Appellants argue that they preserved error at several points in the process:

- Yarborough testified on cross-examination that the time she spent defending appellants' claims and the time she spent prosecuting Dietrich's counterclaims were "all billed together."

- After she was cross-examined, Yarborough added, "Mr. Dietrich hired me to defend all of his claims, and there's no requirement for me to separate his bill for his benefit. And he did not ask me to do that."

- During closing argument, appellants' counsel argued, "Attorney's fees are not segregated out at all. There's nothing to distinguish what parts are for the declaratory judgments and what parts, as counsel testified yesterday, are for the defense of Mr. Dietrich. We would show that they're not recoverable."

- After trial but more than two months before the trial judge signed the original final judgment, appellants filed a "bench brief" raising a failure to segregate argument.

- Appellants also raised a failure to segregate argument in their new trial motions and their motion to modify the judgment.

Because evidence of unsegregated fees is some evidence of segregated fees, *Tony Gullo Motors*, 212 S.W.3d at 314, a strong argument can be made that (i) a failure to segregate complaint is essentially a factual sufficiency of the evidence challenge and thus (ii) no error preservation is

–23–

necessary in the bench trial context. *See* TEX. R. APP. P. 33.1(d). But we need not decide that question because we recently held in a bench trial appeal that a failure to segregate challenge was preserved by an objection that was made after the court's ruling awarding fees but before final judgment. *Anderton v. Green*, 555 S.W.3d 361, 372 n.4 (Tex. App.—Dallas 2018, no pet.). Here, we conclude that appellants satisfied any preservation requirement by pointing out the problem during closing argument and in their post-trial filings.

### 4. Does the record show that some of Dietrich's fees were not recoverable and thus that segregation was required?

Yes, the record shows that some of Dietrich's fees were incurred for legal services on matters for which fees were not recoverable.

As previously noted, both sides asserted declaratory judgment claims. The law authorized the trial court to award "reasonable and necessary attorney's fees as are equitable and just" in relation to those claims. CIV. PRAC. & REM. CODE § 37.009. The trial court also invoked Estates Code § 352.052(b), which authorized Dietrich to recover attorney's fees for defending a will. Those were the only two bases the trial court gave for the fee awards. But both sides also pled other claims, such as (i) appellants' claims for fiduciary breach and wrongful interference with inheritance rights and (ii) Dietrich's claims for conversion and unjust enrichment.

Because Yarborough's testimony conceded that Dietrich's fee evidence was not segregated, the only question is whether the record also shows that some of Dietrich's fees were incurred to prosecute or defend claims for which fees are not recoverable under the Declaratory Judgments Act or Estate Code § 352.052(b). We conclude that the answer is yes.

One example of an unrecoverable fee is the legal fee Dietrich incurred to prosecute his unjust enrichment claim for the $24,280 he paid for Dottie's income taxes from 2009 to 2015. That claim has nothing to do with Dottie's will, so Estates Code § 352.052(b) doesn't support a fee recovery on that claim. And although Dietrich also sought and obtained a declaratory judgment

–24–

on his entitlement to that recovery as well as actual damages, the Declaratory Judgments Act can't be used as a vehicle to recover otherwise unrecoverable attorney's fees. *See, e.g.*, *City of Carrollton v. RIHR Inc.*, 308 S.W.3d 444, 454–55 (Tex. App.—Dallas 2010, pet. denied). Thus, Dietrich was required to segregate those fees from his recoverable fees.

Another example would be legal fees incurred to prosecute Dietrich's claim for a $40 late fee he incurred in paying his property taxes "because Guillory changed the mailing address with Kaufman County." Those fees were not recoverable under Estates Code § 352.052(b) or the Declaratory Judgments Act, so Dietrich had to segregate them from his recoverable fees.

For the foregoing reasons, we sustain appellants' fourth issue.

## F. Issue Six: Did the trial court err by adopting Dietrich's proposed findings of fact and conclusions of law?

Appellants assert that the trial court erred by simply adopting Dietrich's voluminous proposed fact findings and legal conclusions "without any independent expressed judicial thought evidencing independent judicial findings and conclusions." However, they present the issue only to preserve it for en banc or supreme court review, acknowledging that binding precedents constrain this panel to overrule this issue. They correctly assess our precedents. *See, e.g.*, *In re A.W.L.*, No. 05-16-00916-CV, 2018 WL 446421, at *3 (Tex. App.—Dallas Jan. 17, 2018, no pet.) (mem. op.) (trial court does not err by adopting party's proposed findings and conclusions). Accordingly, we overrule appellants' sixth issue.

## IV. CONCLUSION

We reverse the judgment to the extent it awards Dietrich actual damages totaling $75,169.98, and we render judgment that Dietrich recover $48,700.98 in actual damages from appellants jointly and severally. We also reverse the awards of prejudgment interest, postjudgment interest, and attorney's fees. We remand the case for further proceedings as to Dietrich's claim

for attorney's fees and for recalculation of prejudgment and postjudgment interest.  We affirm the remainder of the judgment.

/Bill Whitehill/
BILL WHITEHILL
JUSTICE

180504F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

CARLETTA GUILLORY, SHARON REDD, AND ROBERT MAURICE CHARVOZ, JR., Appellants

No. 05-18-00504-CV       V.

WILLIAM E. DIETRICH, Appellee

On Appeal from the County Court at Law No. 2, Kaufman County, Texas
Trial Court Cause No. 94304-CC2.
Opinion delivered by Justice Whitehill.
Justices Partida-Kipness and Pedersen, III participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part.

We **REVERSE** the judgment to the extent it awards appellee William E. Dietrich actual damages totaling $75,169.98 and to the extent it awards appellee William E. Dietrich prejudgment and postjudgment interest on that amount. We **RENDER** judgment that appellee William E. Dietrich recover actual damages of $48,700.98 from appellants Carletta Guillory, Sharon Redd, and Robert Maurice Charvoz, Jr., jointly and severally.

We also **REVERSE** the judgment to the extent it awards appellee William E. Dietrich attorney's fees.

We **AFFIRM** the remainder of the judgment.

We **REMAND** the case for further proceedings on appellee William E. Dietrich's claims for attorney's fees and for recalculation and awards of prejudgment and postjudgment interest.

It is **ORDERED** that each party bear his or her own costs of this appeal. We **DIRECT** the trial court to recalculate the amounts to be required as cash deposits in lieu of supersedeas bond.

Judgment entered January 6, 2020.